## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **SARA GONZALES,** | |
|     **Plaintiff,** | |
| **v.** | |
| **CITY OF DALLAS** | **Civil Action No.** |
|     **Defendant,** | |
| **and** | **COMPLAINT** |
| **BETO FOR TEXAS** | |
|     **Defendant,** | |
| **and** | |
| **JACKIA MILES** | |
|     **Defendant,** | |
| **and** | |
| **CYNTHIA CANO** | |
|     **Defendant.** | |

Plaintiff SARA GONZALES, by and through her undersigned counsel, Jonathan Stuart Gross and John Leslie respectfully alleges as follows:

## INTRODUCTION AND STATEMENT OF THE CASE

1.       This First Amendment case arises from the assault of Sara Gonzales by Cynthia Cano – an employee of the Beto for Texas gubernatorial campaign – and Jackia Miles – a Dallas City police officer acting under the color of state law.

2.       The Plaintiff, Sara Gonzales, is a television show host and outspoken critic of Beto O'Rourke, a candidate for Texas Governor in the November 2022 election.

3.       At an event on March 6, 2022, featuring O'Rourke, Gonzales was standing peacefully recording with her phone, when she was suddenly and without warning assaulted by Cano and Miles.  A video of the assault was captured on Gonzales' phone.

4.       This action alleges that the Beto for Texas campaign has a policy in place to prevent at any cost the production of videos that cast O'Rourke in a negative light, and Cano, as an employee of the campaign, assaulted Gonzales in furtherance of that policy, and that Miles, acting under the color of state law, was aware of the campaign's "no negative video" policy and also assaulted Gonzales in furtherance of that policy, violating Gonzales' First and Fourth Amendment rights.

5.       In this action, Gonzales seeks compensation for her injuries and for the violation of her civil rights, pursuant to 42 U.S.C. 1983.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3), and 42 U.S.C. § 1983, which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges and immunities secured by the

laws and Constitution of the United States.  This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

      7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred, and continue to occur in this District.

**PARTIES**

      8.      Plaintiff SARA GONZALES is an adult citizen of the State of Texas.

      9.      Defendant BETO FOR TEXAS is a domestic nonprofit corporation registered in the state of Texas and having its principal place of business at 13409 NW Military Hwy Ste 300 Shavano Park, TX 78231.

      10.      Defendant CITY OF DALLAS is a corporation authorized to do business in the state of Texas and having its principal place of business there.

      11.      Defendant JACKIA MILES is an adult citizen of the State of Texas.

      12.      Defendant CYNTHIA CANO is an adult citizen of the State of Texas.

**FACTS**

      13.      Beto O'Rourke ("O'Rourke") is the Democrat Party's candidate for governor of Texas in the November 2022 election.

      14.      Defendant Beto for Texas ("Beto") is a domestic nonprofit corporation which supports O'Rourke's campaign for governor.

      15.      On March 6, 2022, Beto participated in an event, hosted at Dallas' Northaven United Methodist Church, that included a "Meet and Greet" with candidate O'Rourke.

16.     At the Meet and Greet, O'Rourke stood on an elevated stage about three feet high, while constituents who attended the event were invited to line up and wait their turn to ascend the four steps to the stage to shake O'Rourke's hand, ask him questions, and take a picture with him.

17.     Defendant Cynthia Cano ("Cano") is employed by Beto and was working at the Meet and Greet.

18.     Defendant Jackia Miles ("Miles") is a Dallas City police officer.

19.     At the Meet and Greet, Miles was dressed in full police uniform and was there to provide security.

20.     Plaintiff Sara Gonzales ("Gonzales") is a constituent who is also the host of a television show that has received millions of views across social media.  Gonzales is an outspoken critic of O'Rourke, and a vocal public supporter of Chad Prather, who was a candidate in the Republican party's gubernatorial primary election held just days before the Meet and Greet.

21.     Upon information and belief, prior to the Meet and Greet, employees of Beto knew about Gonzales from her television show and that she was critical of O'Rourke.

22.     Gonzales attended the Meet and Greet and waited in line to meet and greet O'Rourke.

23.     Next to Gonzales in line was Cassady Campbell ("Campbell"), a constituent and popular social media influencer with over a million subscribers on Youtube.  Campbell has posted dozens of parody videos that are critical of the policies advocated by O'Rourke.

24.     When Campbell entered the church where the Meet and Greet was held, he noticed that Miles was following him.

25.    After following Campbell around the church for a few minutes, Miles approached Campbell and asked him why he came to the Meet and Greet.

26.    Campbell told Miles that he intended to ask Beto if he would denounce Klaus Schwab and the World Economic Forum.

27.    Upon information and belief, Miles was instructed before the Meet and Greet to identify individuals who are critical of O'Rourke and to report them a Beto employee.

28.    Upon information and belief, when Miles first saw Campbell, she suspected that Campbell fit the profile of a critic.

29.    Upon information and belief, when Campbell told Miles his intention, it verified Miles' suspicion.

30.    Upon information and belief, Miles reported Campbell's presence and intention to Cano.

31.    While waiting in line to meet and greet O'Rourke, Campbell told Gonzales that he intended to ask O'Rourke a difficult question, and he asked Gonzales if she would use her phone to record the interaction on video.  Gonzales agreed to do so.

32.    Gonzales intended to record the interaction between Campbell and O'Rourke so that she could publish the video on the internet and inform the public about the Democrat Party's candidate for governor.

33.    At no time were constituents at the Meet and Greet requested to refrain from taking video recordings; O'Rourke's speech directly preceding the Meet and Greet was live streamed on the internet and many constituents used their phone to record the Meet and Greet.

34.     Gonzales and then Campbell were invited to ascend the four steps to the stage to meet and greet O'Rourke.  Campbell stood next to O'Rourke and began asking his question, while Gonzales stood by about three feet away from the pair, holding her phone up with her left hand to record the interaction.

35.     Upon information and belief, Cano, who was standing on the stage to the left of Gonzales, recognized Gonzales and Campbell as critics of O'Rourke, and sprung to action to prevent Gonzales from recoding what could potentially be a damaging video of O'Rourke.

36.     Upon information and belief, Beto has a policy that employees, including Cano, are instructed to prevent constituents from producing videos of O'Rourke that Beto perceives as potentially damaging to O'Rourke's candidacy, and Cano was acting pursuant to that policy.

37.     Upon information and belief, the police officers that provided security at the Meet and Greet were also instructed to prevent the production of videos that may be damaging to O'Rourke's candidacy.

38.     As Gonzales was standing peacefully and recording, Cano stepped in between Gonzales and O'Rourke, and stuck her left hand in front of Gonzales' phone and said "Sorry we're not recording."

39.     Before Gonzales could comply or respond, Cano grabbed Gonzales' hand and tried to pry Gonzales' phone from her hand.

40.     Gonzales struggled with Cano to maintain control of her phone and said, "don't touch my phone, don't touch my phone."

41.     Suddenly and without warning, Miles came from behind Gonzales and said "I don't gotta touch your phone, I can just touch you."

42.     With both hands, Miles, who was still standing behind Gonzales, firmly grabbed Gonzales' arms and forcibly pinned them against Gonzales' sides so that Gonzales could not move them.

43.     Gonzales did not know what was happening and felt threatened for her physical safety.

44.     Still pinning Gonzales' arms, Miles proceeded to push Gonzales from behind for a distance of 4 or 5 feet towards the stairs and the parallel adjacent ramp that ascended to the stage.

45.     Gonzales nearly tripped as she was pushed to the stairs/ramp and once again feared imminent bodily injury.

46.     Miles then shoved Gonzales down the stairs/ramp.

47.     At that point, Gonzales turned around and saw for the first time that the person who had grabbed her from behind and pushed her down the stairs/ramp was a police officer.

48.     Upon learning this, Gonzales became more frightened.  Prior to learning that the person who grabbed and pushed her was a police officer, Gonzales intended to call the police for help, but seeing that the person was a police officer, Gonzales felt she had nowhere to turn for help.

49.     In a state of shock from being grabbed and pushed by a police officer, Gonzales asked Miles, "What is your badge number?  Why did you just push me down the stairs?"

50.     Miles quickly recited her badge number, gestured towards another officer who was approaching Gonzales, and walked away.

51.     Gonzales at first assumed the second officer was coming to help, but instead the officer asked Gonzales to leave.

52.     Gonzales indicated that she would comply and leave, but she asked, "why did she [Miles] put her hands on me so hard?"

53.     The officer did not deny that Miles had "put her hands … so hard" on Gonzales, and said she did so "because she asked you to leave and you're not leaving."

54.     Gonzales responded, "No she didn't, she didn't ask me to leave at all, she pushed me down the stairs."

55.     Rather than help Gonzales, the officer said, "I'm telling you to leave."

56.     As she was walking out of the church, she was told that if she did not leave, she would be arrested for trespassing.

57.     Miles had not asked Gonzales to leave before the attack.  Miles had given no instructions to Gonzales before sneaking up on her from behind and grabbing her and pushing her down the stairs, nor did Miles even make her presence known to Gonzales.

58.     Upon information and belief, Miles' intention was to silence Gonzales' speech by preventing Gonzales from publishing information on the internet that would damage O'Rourke's candidacy.

59.     After the event, O'Rourke publicly thanked Miles by posting a picture of himself standing next to Miles at the Church in the place Gonzales was assaulted, with the message "Big thanks to Officer Miles for being with us at our town hall and for serving our community each day."

60.     Miles' belief that she was entitled, under the color of state law, to use direct physical force against Gonzales' body to silence Gonzales, was evidenced by Miles' statement, "I don't gotta touch your phone, I can touch you."

**COUNT I**
**All Defendants**
**Assault**

61.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

62.     Defendants have intentionally and knowingly threatened Plaintiff with imminent bodily injury and intentionally and knowingly caused physical contact with Plaintiff when Defendants knew that the other would regard the contact as offensive and provocative.

**COUNT II**
**Defendants City of Dallas and Miles**
**United States Constitution**
**42 U.S.C. § 1983: First Amendment**
**Freedom of Speech/Freedom of Assembly**

63.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

64.     Defendants City of Dallas and Miles, acting under the color of state law, have deprived Plaintiff of her right to free speech and free assembly, as protected by the First Amendment of the Constitution.

**COUNT III**
**Defendants City of Dallas and Miles**
**42 U.S.C. § 1983: Fourth Amendment**
**Excessive Use of Force**

65.     The foregoing paragraphs are incorporated by reference as if set forth fully herein.

66.      Defendants City of Dallas and Miles have deprived Plaintiff of her right to protection against excessive force by law enforcement as secured by the Fourth Amendment to the United States Constitution, by applying force to Plaintiff that was excessive and unreasonable given the context and circumstances under which the force was applied.

**PRAYER FOR RELIEF**

A.     An order declaring Defendants' conduct to be unlawful and unconstitutional;

B.     An order awarding Plaintiff's damages suffered as a result of the physical attack on her person;

C.     An order awarding Plaintiff's damages suffered as a consequence of Defendants' violation of Plaintiff's constitutional rights;

D.     An order awarding Plaintiff's damages for the violation of Plaintiff's constitutional rights;

E.     Any other relief, including attorneys' fees and court costs, the Court judges to be proper, and/or is permitted under 42 U.S.C § 1988.

**DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues so triable.

DATED this 17th day of June 2022.

Respectfully submitted,

/s/**Jonathan Gross**
Jonathan Gross, *Pro Hac Vice pending*
Maryland State Bar No. 1912170138
The Clevenger Firm
2833 Smith Ave.
Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com

*Lead Counsel for Plaintiff*

/s/John Leslie
John Leslie, PLLC
State Bar No. 12231400
1805 West Park Row Drive
Suite C
Arlington, TX 76013
(817) 405-7700
arlingtonlaw@aol.com

*Local Counsel for Plaintiff*